WO                IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

NIKKI M. SPAULDING, a married woman, )
)
)
                                  Plaintiff, )
)
    vs. )
)
HONEYWELL AEROSPACE, et al., )
)   No. 2:16-cv-2338-HRH
                            Defendants. )
_____)

O R D E R

Motion to Remand

Plaintiff moves to remand this case.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff Nikki M. Spaulding was an employee of defendant Honeywell Aerospace, a division of Honeywell International, and a participant in a short-term disability plan (STD Plan) sponsored by Honeywell. The STD Plan is a payroll practice exempt from ERISA. The STD Plan was administered by defendant Life Insurance Company of North America (LINA).

---

[1]Docket No. 10.

[2]Docket No. 19.

The STD Plan provides that the plan administrator is the Vice President of Human Resources for Compensation and Benefits.

Plaintiff applied for STD benefits on May 20, 2015.[3] LINA denied her claim for STD benefits on July 16, 2015 on the grounds that she did not meet the STD Plan's definition of disability.[4] Plaintiff appealed that denial and on August 24, 2015, LINA upheld its benefits decision.[5]

On May 10, 2016, plaintiff commenced this action in state court. Plaintiff's complaint names Honeywell Aerospace, LINA, and Steve Kelly as defendants. Plaintiff alleges that Kelly was the plan administrator of the STD Plan.[6] Plaintiff asserts five claims in her complaint: 1) unpaid wages pursuant to A.R.S. § 23-355, 2) tortious interference with contract, 3) breach of the implied covenant of good faith and fair dealing, 4) intentional infliction of emotional distress, and 5) unpaid wages pursuant to Delaware law.

After plaintiff served and filed her complaint in state court, the parties engaged in a series of emails regarding Kelly's status as a party.[7] Plaintiff ultimately agreed to dismiss Kelly because he was not the plan administrator but the parties could not agree on whether

---

[3] Complaint at 4, ¶ 27, Exhibit A, Notice of Removal, Docket No. 1.

[4] Id. at ¶ 28.

[5] Id. at ¶¶ 29-30.

[6] Id. at 2, ¶ 6.

[7] Exhibit 1, Motion to Remand, Docket No. 10.

plaintiff had a valid claim against the actual plan administrator given that the STD Plan is not an ERISA plan.[8]

But before plaintiff could dismiss Kelly, defendants removed this action from state court on the basis of diversity jurisdiction. Although Kelly was alleged to be a resident of Arizona in plaintiff's complaint,[9] defendants asserted in their notice of removal that Kelly was fraudulently joined.

Plaintiff now moves to remand this matter to state court.[10]

Discussion

"A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction." Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 2016 WL 6122776, at *3 (9th Cir. 2016). The court has original jurisdiction of cases "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]" 28 U.S.C. § 1332(a)(1). There is a strong presumption against removal,[11] Gaus v. Miles, 980 F.2d 564, 566 (9th Cir.

---

[8]Id.

[9]Complaint at 2, ¶ 5, Exhibit A, Exhibit A, Notice of Removal, Docket No. 1.

[10]On the day after plaintiff filed the instant motion to remand, she filed an amended complaint. The amended complaint removes Kelly as a defendant and deletes the Delaware wage claim. Docket No. 11. But, "the propriety of removal is determined solely on the basis of the pleadings filed in state court." Williams v. Costco Wholesale Corp., 471 F.3d 975, 976 (9th Cir. 2006).

[11]Although the Supreme Court has held that there is no presumption against removal
(continued...)

1992), and "removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005).

Plaintiff argues that removal was improper because the amount in controversy does not exceed $75,000. In the Ninth Circuit, the amount in controversy is defined "as the 'amount at stake in the underlying litigation[.]'" Gonzales, 2016 WL 6122776, at *3 (quoting Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005)). "This amount includes, inter alia, damages (compensatory, punitive, or otherwise) and ... attorney's fees awarded under fee shifting statutes." Id. "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). The removing party meets its burden by "establishing that it is 'more likely than not' that the amount in controversy exceeds $75,000." Del Real v. Healthsouth Corp., 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001) (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). But, "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." Matheson, 319 F.3d at 1090.

---

[11](...continued)
in CAFA cases, the Court did not "decide whether such a presumption is proper in mine-run diversity cases." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Thus, the presumption against removal continues to apply in non-CAFA cases such as this.

"[T]he court considers 'the amount in controversy at the time of removal.'" Patel v. Nike Retail Services, Inc., 58 F. Supp. 3d 1032, 1043 (N.D. Cal. 2014) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "The general rule is that the amount in controversy represents 'an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" Kuxhausen v. BMW Financial Services NA LLC, 707 F.3d 1136, 1140 n.2 (9th Cir. 2013) (quoting Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010)). The court generally "assume[s] that a jury will return a verdict for the plaintiff on all claims made in the complaint." Forever Living Products U.S. Inc. v. Geyman, 471 F. Supp. 2d 980, 986 (D. Ariz. 2006).

Plaintiff contends that her wage claim is only worth $22,688.46. Plaintiff has alleged that she would be eligible for 25 weeks of benefits under the STD Plan,[12] which amounts to $22,688.46 in wages. Plaintiff acknowledges that treble damages are available under A.R.S. 23-335, which would increase the compensatory damages on her Arizona wage claim to $68,065.38; however, "treble damages are not mandatory under § 23–355(A), but are left to the discretion of the ... court." D'Amico v. Structural I Co., 274 P.3d 532, 536 (Ariz. Ct. App. 2012). Although not the only basis for awarding treble damages, courts will award treble damages when the employer did not have a good faith basis for failing to pay the wages due. Apache East, Inc. v. Wiegand, 580 P.2d 769, 773 (Ariz. Ct. App. 1978). Plaintiff contends

---

[12]Complaint at 13, ¶ 130, Exhibit A, Notice of Removal, Docket No. 1.

that defendants have not offered any evidence that would suggest that treble damages would be appropriate in this case.

Plaintiff, however, has alleged that she is entitled to treble damages.[13] And, as defendants are quick to point out, the fact that treble damages are not automatic does not mean that they should not be considered in determining the amount in controversy. See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (noting that the district could have taken discretionary treble damages "into account when determining the amount in controversy"). Thus, for purposes of determining whether the amount in controversy has been met, plaintiff's Arizona wage claim is valued at $68,065.38. The question then becomes whether there is an additional $6934.62 in dispute here.

Defendants insist that there is. First of all, defendants point out that plaintiff has not only asserted an Arizona wage claim but also a Delaware wage claim. It is possible that plaintiff could recover up to $125,000 under the Delaware wage statute. However, plaintiff pled the Delaware wage claim in the alternative. "[O]ne claim pleaded in the alternative under separate legal theories *cannot* be aggregated for jurisdictional purposes." Holmes v. Boehringer Ingelheim Pharmaceuticals, Inc., 158 F. Supp. 2d 866, 868 (N.D. Ill. 2001). For purposes of determining the amount in controversy, it would inappropriate for the court to consider both the $68,065.38 that plaintiff could recover under the Arizona wage statute and the $125,000 that she could recover under the Delaware wage statute. Given that defendants

---

[13]Complaint at 8, ¶ 75, Exhibit A, Notice of Removal, Docket No. 1.

do not dispute that Honeywell is an employer under Arizona law and thus subject to the Arizona wage statute, the court will consider the damages that might be available to plaintiff under the Arizona wage statute and not consider the damages that might be available under the Delaware wage statute.

In addition to her Arizona wage claim, plaintiff has also asserted three state-law tort claims. Defendants argue that plaintiff would recover some damages on these claims if a jury were to find in her favor on these claims because plaintiff would be able "recover all the losses caused by [their] conduct, including damages for pain, humiliation and inconvenience, as well as for pecuniary losses." Rawlings v. Apodaca, 726 P.2d 565, 577 (Ariz. 1986).

But, there is some authority that suggests that removal can only be based on legally cognizable claims. See Blue v. Fremont Investment & Loan, 584 F. Supp. 2d 10, 13 (D.D.C. 2008) ("Having eliminated Count I of Plaintiffs' Amended Complaint as non-cognizable, the remaining claims against Defendants do not establish an amount in controversy that exceeds $75,000"). Here, defendants have moved to dismiss plaintiff's tort claims without leave to amend. If plaintiff's tort claims are non-cognizable as defendants contend, then it would seem inappropriate to include any damages related to plaintiff's tort claims when considering whether the amount in controversy has been met. On the other hand, the court is mindful that the relevant inquiry here the amount in controversy at the time of removal, and at the time of removal, plaintiff had asserted three state law claims, presumably because she believed that she might recover some damages on these claims. But, because any doubts are to be resolved

in favor of remand, Gaus, 980 F.2d at 566, plaintiff's tort claims will not be considered for purposes of determining of whether the amount in controversy has been met.

Because plaintiff's tort claims are not being considered, plaintiff's request for punitive damages will also not be considered as that request is based on plaintiff's tort claims. Plaintiff could only recover punitive damages if she were to recover on one or more of her tort claims.

The court may, however, consider attorney's fees when calculating the amount in controversy. In support of their notice of removal, defendants offered the declaration of their lawyer who avers that a typical insurance bad faith claim generates $150,000 in attorney's fees.[14] Although "there is disagreement within this circuit as to whether attorneys' fees incurred after the date of removal are properly included in the amount in controversy[,]" courts in this district have generally held that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal." Dukes v. Twin City Fire Ins. Co., Case No. CV–09–2197–PHX–NVW, 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010); see also, Patrick v. Costco Wholesale Corp., Case No. CV12–2633 PHX DGC, 2013 WL 685892, at *1 (D. Ariz. Feb. 25, 2013) (same). Thus, the court will only consider attorney's fees that were incurred prior to removal. As for what that amount might be, defendants have offered no evidence, but it is unlikely that plaintiff would have incurred almost $7,000 in fees prior to removal.

---

[14]Declaration of Kristina N. Holmstrom at 2, ¶ 4, Exhibit A, Notice of Removal, Docket No. 1.

Defendants also argue that the certificate of arbitration suggests that the amount in controversy has been met here. Under the Arizona Rules of Civil Procedure, arbitration is required in cases in which no party is seeking in excess of $50,000. Plaintiffs are required to file a certificate of arbitration when they commence an action. Although plaintiff filed a certificate of arbitration in which her counsel stated that this case was not subject to compulsory arbitration,[15] "the certificate regarding compulsory arbitration does nothing more than establish that the amount in controversy is likely more than $50,000." Welsh v. New Hampshire Ins. Co., 843 F. Supp. 2d 1006, 1010 (D. Ariz. 2012) (citation omitted). It "does not prove that damages will exceed $75,000." Id.

Finally, defendants point to plaintiff's refusal to stipulate to limit the amount in controversy in this case to $75,000. After plaintiff filed her motion to remand, defendants offered to stipulate to proceed in state court if plaintiff were to stipulate that she would not seek, accept, or execute on any verdict, judgment, or award totaling more than $75,000, excluding interest and costs.[16] Plaintiff refused.[17] Defendants contend that plaintiff's refusal is evidence that her claims have put at issue more than $75,000. See Del Real, 171 F. Supp. 2d at 1043 (treating the plaintiff's refusal to sign such a stipulation as "another indication [the p]laintiff is seeking an amount in excess of the jurisdictional requirement").

---

[15]Certificate of Compulsory Arbitration, Exhibit A, Notice of Removal, Docket No. 1.

[16]Exhibit B, Honeywell's Response to Motion to Remand, Docket No. 19.

[17]Id.

"[T]he law in this Circuit ... is far from settled concerning the impact of a refusal to stipulate to the amount in controversy." <u>Gordon v. Allstate Ins. Co.</u>, Case No. CV-09-1828–PHX–MHM, 2010 WL 1949164, at *2 (D. Ariz. May 13, 2010) (citing <u>Conrad Assocs. v. Hartford Acc. & Indem. Co.</u>, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998)) ("Defendant's assertion that it is 'conclusively established' that the amount in controversy in this case exceeds $75,000 by plaintiff's refusal to stipulate that the case is not worth $75,000 is not convincing."). Here, defendants were including attorney's fees for the entire case in the $75,000 limit. It is quite possible that if plaintiff were to ultimately prevail on her Arizona wage claim, her damages and attorney's fees would exceed $75,000. Plaintiff's unwillingness to cap her total recovery at $75,000 is not evidence that the amount in controversy at the time of removal exceeded $75,000.

Conclusion

Defendants have established that $68,065.38 is in controversy. Because that amount falls below the jurisdictional requirement,[18] plaintiff's motion to remand[19] is granted.

DATED at Anchorage, Alaska, this 23rd day of November, 2016.

/s/ H. Russel Holland<br>United States District Judge

---

[18] Because the amount in controversy has not been met, the court need not consider the issue of whether Kelly was fraudulently joined.

[19] Docket No. 10.